COCA–COLA CO. v. DEACON BROWN BOTTLING CO. et al.

(District Court, N. D. Alabama, S. D.  February 20, 1912.)

No. 220.

1. TRADE-MARKS AND TRADE-NAMES (§ 93*)—VALIDITY—EFFECT OF REGISTRA-
TION—EVIDENCE.

Evidence *held* to establish the exclusive use of the words "Coca-Cola"
as a trade-mark in interstate commerce by the Coca-Cola Company for
more than 10 years next preceding February 20, 1905, so that its regis-
tration thereafter made it a valid trade-mark, under Act Feb. 20, 1905,
c. 592, § 5 (b), 33 Stat. 725 (U. S. Comp. St. Supp. 1911, p. 1461), regard-
less of the descriptive character of the words.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent.
Dig. §§ 104–106; Dec. Dig. § 93.*]

2. MONOPOLIES (§ 21*)—SUIT FOR INFRINGEMENT—DEFENSES.

That a manufacturer's sale contracts may be invalid, as in violation of
Sherman Anti-Trust Act July 2, 1890, c. 647, § 1, 26 Stat. 209 (U. S. Comp.
St. 1901, p. 3200), is no defense to a suit for infringement of its trade-
mark.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 15; Dec. Dig.
§ 21.*]

3. COURTS (§ 310*)—FEDERAL COURTS—PARTIES—JOINDER.

Merely proper or even necessary parties are not required to be joined
in a federal court, where the result would be to defeat its jurisdiction.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 857; Dec. Dig.
§ 310.*]

4. TRADE-MARKS AND TRADE-NAMES (§ 95*)—SUIT FOR INFRINGEMENT—PRE-
LIMINARY INJUNCTION.

A preliminary injunction granted to restrain infringement of the trade-
mark "Coca-Cola."

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent.
Dig. § 108; Dec. Dig. § 95.*]

In Equity.  Suit by the Coca-Cola Company against the Deacon
Brown Bottling Company and others.  On motion for preliminary
injunction.  Motion granted.

Percy, Benners & Burr, of Birmingham, Ala., and Candlers, Thom-
son & Hirsch, of Atlanta, Ga., for complainant.

Samuel B. Stern, of Birmingham, Ala., and Perkins Baxter, of
Nashville, Tenn., for defendants.

GRUBB, District Judge.  The right of complainant to the use of
the words "Coca-Cola" as a technical trade-mark under the act of
1881 is doubtful; at least, in view of the fact that the words are ad-
mittedly suggestive, and probably merely descriptive of the constitu-
ents of the beverage, and not subject to be appropriated as a trade-
mark.  On motion for a preliminary injunction, the complainant is

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

required to make his right clear, and under this claim has not succeeded in doing so to my satisfaction.

[1] The evidence, however, satisfied me that the complainant and its predecessors in title to the trade-mark have had actual and exclusive use of the combined words "Coca-Cola" for at least 10 years preceding April 1, 1905, the date of the taking effect of the act of February 20, 1905. Under this act the trade-mark was again registered. The act, as construed, provides that 10 years' actual and exclusive user of the trade-mark confers the right to register it as a valid trade-mark, though the words are merely descriptive. For this reason, and in view of the facts shown by the affidavits, I think the complainant is entitled to the benefit of the trade-mark; it having been shown to have acquired a secondary meaning, indicative of origin and ownership or manufacture of "Coca-Cola" by complainant, by such user, in addition to the presumption, from a user of 10 years before the enactment of the statute, that it had acquired such secondary meaning.

Infringement is shown, if the trade-mark is valid, without conflict. The evidence does not show that a deleterious substance is included in the formula, or purposely introduced into the beverage, and there is not sufficient showing that complainant is disentitled to protection upon that ground.

[2] Alleged invalidity and illegality of the dispensing contract, because of the Sherman Act, is no ground for denying the complainant protection against an infringement of its trade-mark, since awarding such relief does not involve the enforcement of the alleged illegal contract.

[3] The licensees of complainant are not exclusive licensees, and hence not necessary, but at most only proper, parties; and as the Birmingham company is a citizen of Alabama, the making of it a party would deprive the court of jurisdiction of the case, so far as it seeks relief, at least, from unfair competition, and apart from the registered trade-mark. Merely proper and even necessary parties are not required to be joined, when the result is to defeat jurisdiction. Complete justice can be done as between the present parties to the bill.

Complainant has sufficient interest in the subject-matter of the suit to maintain it. It retains title to the trade-mark and is directly interested in the infringement of it, with reference to even bottled goods, since the diminution of sales, by infringement of the bottlers, reflects on its sales to the bottlers.

The act of February 20, 1905, does not seem to me to be open to the constitutional objections asserted against it by respondents.

[4] The probability of complainant's ultimate success seems to me great enough to justify the issue of the temporary injunction. Allowance of damages for infringement is an inadequate remedy to plaintiff, because of the impossibility of any accurate measurement of its accrued damages and the uncompensated inroad on its good will by continued use of defendant's mark. The same may be said of defendant's right to indemnify on an injunction bond. However, the defendant can continue its business, using a different mark, or none

at all, so that there will not be a total interruption of its business; and the trial of the cause can be speeded to final order by any reasonable decree desired by defendant, and all reasonable protection given it by requiring the execution of a proper injunction bond.

I think the greater probability of injury, not capable of being indemnified against, is with the denial of the temporary injunction.